NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 19 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-10010 |
| Plaintiff-Appellee, | D.C. No. 2:17-cr-00874-DJH-1 |
| v. | |
| JOSE GOMEZ-AGUILAR, AKA Jose Orlando Gomez-Aguilar, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Diane J. Humetewa, District Judge, Presiding

Submitted April 16, 2019**
San Francisco, California

Before: D.W. NELSON, FERNANDEZ, and BEA, Circuit Judges.

Jose Gomez-Aguilar is a native and citizen of El Salvador. He entered the

United States without inspection in 1998. In 2001, Gomez was convicted of

robbery in violation of D.C. Code § 22-2801 (formerly § 22-2901.59). Gomez was

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

deported after immigration officers determined that his robbery conviction was an aggravated felony under 8 U.S.C. § 1101(a)(43), thus rendering him removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). He reentered the country twice and was charged with illegal reentry in violation of 8 U.S.C. § 1326. Gomez filed a motion to dismiss pursuant to 8 U.S.C. § 1326(d), claiming that his removal order was invalid because D.C. Code § 22-2801 was not an aggravated felony. The district court denied his motion to dismiss and sentenced Gomez to 30 months' imprisonment and three years of supervised release.

We have jurisdiction under 28 U.S.C. § 1291, and we review de novo the denial of a motion to dismiss under 8 U.S.C. § 1326(d). *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 755 (9th Cir. 2015).

The government argues only that D.C. Code § 22-2801 is an aggravated felony theft offense under 8 U.S.C. § 1101(a)(43)(G). To determine whether D.C. Code § 22-2801 qualifies as a theft offense, we apply the "categorical approach," wherein we "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the generic crime." *United States v. Martinez-Hernandez*, 912 F.3d 1207, 1213 (9th Cir. 2019) (citation omitted). The government also concedes that the D.C. Code § 22-2801 is indivisible. As such, we need not conduct a modified categorical analysis. *See United States v. Walton*, 881 F.3d 768, 774–75 (9th Cir. 2018).

2

The elements of a generic theft offense are "(1) the taking of (2) property (3) without consent (4) with the intent to deprive the owner of rights and benefits of ownership." *Martinez-Hernandez*, 912 F.3d at 1213 (citation omitted). In comparison, the elements of D.C. Code § 22-2801 are "(1) a felonious taking, (2) accompanied by an asportation [or carrying away], of (3) personal property of value, (4) from the person of another or in his presence, (5) against his will, (6) by violence or by putting him in fear, (7) *animo furandi* [the intention to steal]." *Lattimore v. United States*, 684 A.2d 357, 359 (D.C. 1996) (citation omitted); *Criminal Jury Instructions for the District of Columbia*, § 4.300.

Gomez alleges that § 22-2801 is overbroad in four respects, arguing that D.C. robbery: 1) does not require that the item taken be "property"; 2) does not require that the item be taken with the intent to deprive the owner of rights and benefits of ownership; 3) does not require that the item be taken without consent; and 4) extends to accessories after the fact. We reject each of his arguments in turn.

First, § 22-2801 requires that the item taken be property. *Lattimore*, 684 A.2d at 359; *Criminal Jury Instructions for the District of Columbia*, § 4.300. D.C. robbery does not include theft of services or means of transportation, both of which are covered under a different chapter of the Code. *See* D.C. Code § 22, Chapter 32. D.C. robbery, like generic theft, does not require proof of ownership. *Compare Criminal Jury Instructions for the District of Columbia*, § 4.300, *with Martinez-*

*Hernandez*, 912 F.3d at 1213. Rather, "[w]hat is critical in the generic definition [of a theft offense] is the criminal intent to deprive the owner." *Nevarez-Martinez v. I.N.S.*, 326 F.3d 1053, 1055 (9th Cir. 2003); *see also United States v. Flores*, 901 F.3d 1150, 1161 (9th Cir. 2018) (holding that receipt of stolen property, which does not require proof of ownership, is a generic theft offense).

Second, D.C. robbery falls within the definition of generic theft because it requires intent to steal. *Criminal Jury Instructions for the District of Columbia*, § 4.300; *see United States v. Alvarado-Pineda*, 774 F.3d 1198, 1202–03 (9th Cir. 2014) (stating that, because specific intent to steal is an element of the Washington robbery statute, it falls within the definition of generic theft). The jury instructions also specify that, as with generic theft, "[i]t is necessary that [the defendant] intended to deprive [the victim] of his/her property and to take it for his/her own use." *Criminal Jury Instructions for the District of Columbia*, § 4.300.

In D.C., it is possible to rob a dead person, as Gomez asserts—but only if the requisite intent was formed prior to the victim's death. If the defendant formed the intent to rob prior to the victim's death, a jury could find that the defendant had the requisite intent to "deprive the owner of the rights and benefits of ownership." *See Ulmer v. United States*, 649 A.2d 295, 299 (D.C. 1994) ("appellant intended to steal *before* he killed the victim and therefore clearly [the jury] would have found appellant guilty of intending also to rob the victim *before* his death"); *Smothers v.*

4

*United States*, 403 A.2d 306, 313 n.6 (D.C. 1979) ("a dead person can be a robbery victim, at least where the taking and the death occur in close proximity").

Third, D.C. robbery also requires that the property be taken "against the will" of the victim, thus evincing lack of consent. "The taking must be against the will of the complainant, because no robbery occurs if the complainant knows about and consents to the taking . . . ." *Criminal Jury Instructions for the District of Columbia*, § 4.300; *Lattimore*, 684 A.2d at 359. Even if the robbery victim is aware of the robbery, knowledge does not equate to consent. *See id.* (citing *Noaks v. United States*, 486 A.2d 1177 (D.C. 1985) for the proposition that a "robbery victim need not be ignorant of robbery by stealth").

Finally, D.C. robbery does not extend to accessories after the fact either in language or in practice. Accessories after the fact are charged under a different section of the D.C. Code—§ 22-1806 (formerly § 22-106). *See, e.g.*, *Little v. United States*, 709 A.2d 708, 709 (D.C. 1998). D.C. robbery is therefore also not overbroad in this respect. *See Martinez-Hernandez*, 912 F.3d at 1214 (finding that California Penal Code § 211 does not extend to accessories after the fact based on the language of the statute and because accessories after the fact are charged under a different section of the Code).

**AFFIRMED.**